IGNATIUS R. SIMMS, appellant, *vs.* NELSON H. CLARK and SARAH W. CLARK, appellees.

### *Appeal from Morgan.*

A party who innocently pays away a counterfeit bill, is not bound to take it back, unless it is returned upon him within a reasonable time, after it is discovered to be spurious.

But what shall be considered a reasonable time, must necessarily depend upon the situation of the parties, and the facts and circumstances of the particular case.

Where a party who has paid out a counterfeit note as genuine, on being notified within a reasonable time, of its want of value, states that he will not take the note back, unless compelled by law, such statement dispenses with an offer at that time to return the note.

The defendants in error brought. their action in debt, at the March term, 1849, of the Morgan county Circuit Court, upon a judgment theretofore obtained in the said Court, for the sum of six hundred and eighty-four dollars and eight cents, against the plaintiff in error.   To this action Simms pleaded payment and satisfaction of said judgment.   To this plea the defendants in error replied, that Simms paid a bank note to the plaintiffs, of the denomination of fifty dollars, being of the Miners' Bank of Pottsville, in the county of Schuylkill, in the state of Pennsylvania, (particularly describing it;). which said bank note was part and parcel of the said sum. of six hundred and eighty-four dollars and eight cents, which the said defendant, in said plea, pretends to have paid in satisfaction of said judgment.   The said plaintiffs averred said note to be counterfeit, and that the same was returned to defendant in a reasonable time, &c.   Three rejoinders were interposed to this replication.   1. That defendant did not pay to the plaintiffs any bank note of the Miners' Bank of Pottsville, of the denomination of fifty dollars, in manner and form as in said replication was alleged.   2. That defendant did not pay any counterfeit bank note of the denomination of fifty dollars as the replication alleged.   3. That said plaintiffs did not use due diligence to determine whether said note, &c., was genuine or not; nor did they, within any reasonable time, give notice to the defendant that said note was counterfeit, &c.   Issue was joined, and the cause was tried before Woodson, Judge, and a jury, at March term, 1849, and verdict and judgment for plaintiffs below, for fifty-two dollars and thirty-seven. cents, debt and damages.   There were two. trials.   A motion for a third trial was overruled, and the defendant appealed.   The facts of the case are stated sufficiently in the opinion of the Court.

D. A. SMITH, for appellant:

The only question submitted to the Court is, the propriety of granting a new trial.   It is insisted that the verdict is against the instructions of the Court and the evidence.   Graham on New Trials, chap. 15, 4th head, p. 555.   The evidence shows that the counterfeit bank note, which was passed off innocently, was not returned to the appellant within a reasonable time, after it was discovered that the note was fraudulent.   Gloucester Bank *vs.* Salem Bank, 17 Mass., 42 to 46;   Bank of United

States *vs.* Bank of Georgia, 6 Peters' Cond. Rep., 120; Wilson *vs.* Alexander, 3 Scammon, 394; Starkie on Evidence, 450 to 457, and notes. The principle laid down in Starkie, at the close of page 455, has been unjustly applied by the jury.

J. Evans, for appellees:

1. That the instructions given for Simms, in the Court below, were not in accordance with the law of the case, and if this Court should be of opinion that said instructions should not have been given then, a new trial will not be granted, even if it should appear that the jury found against said instructions. 2. The facts, as proven in the case, did not warrant the jury in finding a verdict in accordance with the instructions given for the defendant, Simms, below, even if those instructions had been the law in the case. 3. The question whether the plaintiffs in the Court below returned said counterfeit bill, within a reasonable time, is purely a question of fact, to be decided by the jury. No general rule can be laid down to govern the case, as each case must depend upon the particular facts and circumstances attending it; and, as in this case, the jury has decided that fact, the Court will not interfere with their verdict. 1 Starkie Ev., 452 to 458. 4. And if the question, whether the plaintiffs below returned said counterfeit bill to the defendant in a reasonable time, is a mixed question of law and fact, the jury, acting under the advice and instructions of the Court, have found a verdict for the plaintiffs twice, and not against the facts nor the law of of the case. 1 Starkie Ev., 452 to 458.

The Judge who tried the cause below, being satisfied that substantial justice had been done, refused to grant the defendant a second new trial, and this Court have decided it a correct rule in this Court not to disturb the verdict in such cases.

Opinion by Mr. Justice Trumbull :

This was an action of debt, brought by the appellees to recover from the appellant the amount of a fifty dollar counterfeit bill, which the latter had paid them upon a judgment which they held against him. The jury found for the plaintiffs below, and the refusal of the Court to set aside their verdict is now assigned for error. The plaintiffs alone introduced evidence before the jury, which it is insisted was insufficient to warrant their

finding. The facts as disclosed by the record are briefly these : Simms, who was indebted to the appellees in the sum of six hundred and eighty-four dollars and eight cents, paid said indebtedness between the 27th of June, 1846, and the 7th of September following, to Judge Brown, who was acting at that time gratuitously as the mutual friend of both parties, and as part of the money so paid, he gave him a fifty dollar counterfeit bill. The appellees at that time resided in the state of Mississippi, but they had an agent, one Branson, residing at Jacksonville, which was also the residence of Simms and all the parties through whose hands the bill passed as hereinafter set forth, except of Campbell, the Auditor of State, who resided at Springfield. The counterfeit note was paid to Brown on the 24th of July, or 8th of August, and on the same day it was paid, or the day following, was handed over to Branson, and he deposited the same in the safe of one Johnson, who examined the note with reference to a counterfeit detector, not of late date, and pronounced it good. The note remained in the safe of Johnson till September 14th, when it was loaned to Neely, the deputy sheriff of Morgan county, on account of the principal sheriff, Davenport, who, the day following, transmitted it to Springfield to the Auditor of Public Accounts, with whom it was deposited on account of said Davenport as collector. The Auditor detected the note to be counterfeit, notified Davenport of it by letter, and requested him to take it up, which he did October 10th. Davenport, immediately upon receiving the notice from the Auditor, notified Neely, who immediately notified Branson, who immediately notified Brown, and requested him to notify Simms, that the note was counterfeit, and would be returned; which Brown did, but could not tell how long it was after the note was returned to Jacksonville : it might have been one or twenty days. He called upon Simms, and told him, without any offer to return the bill, that he, Brown, had received the bill of him, and that Simms would be expected to take it back, to which Simms replied, that if he had paid the note it had been a long time since; that from lapse of time he had lost the run of the note, and his opportunity of recourse, and that he would not take it back unless compelled by law. On the 4th of November, 1846, Branson called upon Simms with the bill, and requested him to take it back, which he refused to do, saying that Judge Brown

had previously spoken to him on the subject.   It was, also, in evidence, that during the year 1846, Simms kept the Western House, in Jacksonville; that one McKay was his clerk, and while so, that he presented said note to a merchant in Jacksonville to get it changed, or examined as to its genuineness; that said merchant examined the bill with reference to a recent counterfeit detector, pronounced it a counterfeit, and so informed McKay. It was further proved, that the note might have been taken up at Springfield, and returned to Simms at Jacksonville, in three days after it was discovered to be counterfeit. It is objected to this evidence that there has been such delay and neglect in returning the note to Simms, as thereby to discharge him from all obligation to take it back.   The law undoubtedly is, that a party who innocently pays away a counterfeit bill is not bound to take it back, unless it is returned upon him in a reasonable time after it is discovered to be spurious, and the reason of the rule is, to enable him to trace out and fall back upon the person from whom he received it.   Thomas *vs.* Todd, 6 Hill, 340.   But what shall be considered a reasonable time, must necessarily depend upon the situation of the parties, and the facts and circumstances of the particular case.   No negligence is imputable to any of the parties into whose hands this bill fell, for not detecting in the first instance its want of value, because the means of ascertaining its genuineness may have been, and probably were, absent from all the parties.   Markle *vs.* Hatfield, 2 John., 455.   In this case there is no pretence of negligence, unless it arises out of the failure of Branson, immediately after the note was returned to him, to notify Simms. The note was returned to Jacksonville about the 10th of October, and Branson immediately requested Brown, through whom the money had been paid, to inform Simms of it.   This was done, but when, does not appear.   Brown, at the time of the trial in 1849, could not tell whether it was within one or within twenty days.   It was certainly before November 4th, as Simms at that time, when the note was offered to him by Branson, stated that Brown had previously spoken to him upon the subject.   Under this evidence, the jury were justified in finding that Brown notified Simms within a reasonable time after the note was returned to Jacksonville, or perhaps the very next day, as was most likely the case, he having been requested to do so, and the par-

ties both residing in the same village. The statement of Simms to Brown, that he would not take the note back unless compelled by law, dispensed with an offer by Brown at that time to return it.

In our judgment this is not a case in which the verdict is so manifestly contrary to evidence, as to warrant its being set aside; nor is it a case in which there is a manifest want of evidence to sustain the cause of action.

*Judgment affirmed.*