In the Matter of the Arbitration between CLARENCE T. BULLARD et al., Copartners under the Firm Name of C. T. BULLARD Co., Appellants, and MORGAN H. GRACE Co., INC., Respondent.

Arbitration — contract — withdrawal of arbitrator before all proofs are heard — filling of vacancy a prerequisite to further proceedings — dispute as to proper construction of submission agreement and withdrawal of party — other party must apply to court for determination whether withdrawing party is in default in refusing to proceed — award made by two arbitrators in absence of third and of withdrawing party properly vacated.

1. When a submission to arbitration by three arbitrators has been entered into pursuant to the terms of a contract to settle all disputes

thereunder by arbitration and one of the arbitrators formally withdraws and refuses to take part therein before all the proofs of the parties have been heard, the filling of the vacancy by appointment of a substitute arbitrator either under the terms of the contract or under sections 3 and 4 of the Arbitration Law becomes a prerequisite to further proceedings under the submission. (Cf. *Matter of Am. Eagle Fire Ins. Co.* v. *N. J. Ins. Co.*, 240 N. Y. 398.)

2. If a *bona fide* question arises as to the proper construction of the submission agreement, a party may raise the question by withdrawing from the arbitration. If the party aggrieved then desires to go on with the arbitration he must apply to the court and the court will determine whether or not the withdrawing party was in default in refusing to proceed to arbitrate a question covered by the submission agreement. (*Bankers & Shippers Ins. Co.* v. *Liverpool M. & G. Ins. Co.*, N. Y. L. J. Mar. 4, 1925, criticized.)

3. Where parties to a contract of sale submitted to arbitration, under the terms of the contract, a dispute as to whether certain merchandise constituted a good delivery, and on the hearing the purchaser claimed the right to arbitrate the quality of the merchandise which the seller disputed, claiming that under the contract government and inspector's certificates were final, but the chairman of the arbitrators ruled that the inspection was not final and that quality would be considered by the arbitrators, whereupon, before any testimony was taken on the subject the seller, together with one of the arbitrators, withdrew and took no further part in the arbitration, an award made by the two remaining arbitrators and the judgment entered thereon is properly vacated under section 1427 of the Civil Practice Act, which statute controls unless the party seeking to uphold the award establishes that it is inconsistent with the terms of the submission.

*Matter of Bullard* v. *Grace Co.*, 210 App. Div. 476, affirmed.

(Submitted May 14, 1925; decided July 15, 1925.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered October 31, 1924, which reversed an order of Special Term confirming an award in arbitration proceedings and vacated a judgment entered thereon.

The facts herein are as follows: Shipments under two contracts were to be made by Grace Company to Bullard Company during November, 1923, from the Argentine. The contracts were each for the sale of 500 cases of Argen-

tine best creamery butter — salted — which contained a provision that the Argentine government inspection certificate certifying that the shipment is of first grade and free from preservatives, together with inspector's certificate certifying free from mold, and weight certificate to be attached to documents were to be final. Each contract also contained a provision that any dispute under the contracts was to be settled by arbitration before the New York Mercantile Exchange. The c. i. f. contracts read: " Price: 32c per lb. c. i. f. New York."

Bullard Company made a claim on Grace Company that the butter did not come up to the quality called for by the contract and demanded an arbitration. The respondent, Grace Company, claimed that the question of quality of the butter on its arrival in New York could not be arbitrated, because there was no dispute arising under the contract since the contract provided that certificates should be final on the subject of quality. The appellant, Bullard Company, asserted that it was entitled to an allowance by reason of the defective quality of the butter and that such claim constituted a dispute to be settled by arbitration under the terms of the contract.

A submission was made which stated the matters submitted to arbitration as follows:

" Whether or not 500 cases of Argentine Best Creamery Butter, contract November 13th, 1923, and 500 cases Argentine Best Creamery Butter, contract November 27th, 1923, are a good delivery per terms of said contracts."

The parties then proceeded to the holding of the arbitration before arbitrators selected. On the hearing of the arbitration the appellants' representative claimed the right to arbitrate the quality of the butter. The respondent's representative stated that the certificates were final and that the quality of the butter was not the subject of the arbitration. The chairman of the arbitrators ruled that the Argentine inspection was not final and that

the quality of the butter must be taken into consideration by the arbitrators.

Before any testimony was taken on this branch of the case, Grace Company, the respondent, together with one of the arbitrators, withdrew, refused to carry out the arbitration proceedings and took no further part therein. Two arbitrators thereafter signed findings and an award, dated January 11, 1924, making an allowance to Bullard Company on each contract for the loss occasioned by the alleged inferior quality of the butter on arrival. The Special Term confirmed the award and denied a motion to revoke it, and judgment was entered thereon. The Appellate Division reversed the order and judgment.

*Samuel Weinberger* for appellants.    The Appellate Division committed reversible error in concluding that no question of quality could arise under the terms of the contract and that, therefore, the quality of the butter could not be submitted to arbitration. (*Wenger & Co.* v. *Propper S. H. Co.,* 239 N. Y. 199; *Standard Casing Co.* v. *California Casing Co.,* 233 N. Y. 416; *Seaver* v. *Lindsay Light Co.,* 233 N. Y. 273; *L. & W. R. R. Co.* v. *United States,* 231 U. S. 363.) The submission agreement was sufficiently comprehensive to permit the arbitrators to inquire into every phase of the contract in dispute, and particularly the quality of the butter. (*People ex rel. N. Y. C., etc., R. R. Co.* v. *Walsh,* 211 N. Y. 90; *Munroe* v. *Alaire,* 2 Caines, 320; *Locke* v. *Filley,* 14 Hun, 139; *Curtis* v. *Gokey,* 68 N. Y. 300; *Cobb* v. *Dolphin Mfg. Co.,* 108 N. Y. 463; *Bedell* v. *Kennedy,* 109 N. Y. 153.) The parties waived the method of procedure under the Civil Practice Act and the Arbitration Law, and submitted the controversy to the arbitrators, subject and pursuant to the rules of the Dried Fruit Association of New York. (*Day* v. *Hammond,* 57 N. Y. 483; *Wiberly* v. *Mathews,* 91 N. Y. 648; *Matter of Smith,* 119 Misc. Rep. 329; *Wood* v. *Auburn & Rochester R. R. Co.,* 8

N. Y. 160; *Hoffman* v. *De Graaf*, 109 N. Y. 638; *N. Y. L. & W. W. Co.* v. *Schneider*, 119 N. Y. 475; *McGreger* v. *Sprott*, 13 N. Y. Supp. 191; *Toledo S. S. Co.* v. *Zenith Transp. Co.*, 184 Fed. Rep. 391; *Lock* v. *Filley*, 14 Hun, 139; *Nichols* v. *Rensselaer Co. Mutual Ins. Co.*, 22 Wend. 125; *Hiscock* v. *Harris*, 74 N. Y. 108.) The Appellate Division erred in holding that the Bullard Company proceeded in disregard of section 3, article 2 of the Arbitration Law. (*B. & S. Ins. Co.* v. *L. M. & G. Ins. Co.*, N. Y. L. J. March 4, 1925.) The arbitrators were not guilty of misconduct in rendering the award after the withdrawal of the Grace Company and one of the arbitrators. (*Day* v. *Hammond*, 57 N. Y. 479; *Itoh & Co.* v. *Boyer Oil Co.*, 198 App. Div. 881; *Fudickar* v. *Guardian Mutual Life Ins. Co.*, 62 N. Y. 392; *Holstead* v. *Seaman*, 82 N. Y. 31.)

*Albert W. Putnam* for respondent. There was no valid arbitration. (*People ex rel. U. Ins. Co.* v. *Nash*, 111 N. Y. 310; *Finucune Co.* v. *Bd. of Education*, 190 N. Y. 76; *Matter of Berkovitz*, 230 N. Y. 261; *Red Cross Line* v. *Atlantic Fruit Co.*, 264 U. S. 109; *Zimmerman* v. *Cohen*, 236 N. Y. 15.) There never was a valid agreement of submission. The actual making of the submission was put in issue and the Grace Company was entitled to have had this issue tried by the court in accordance with the specific provisions of section 3, article 2 of the Arbitration Law. (*Matter of General Silk Importing Co.*, 200 App. Div. 786; 234 N. Y. 513; *Abe Stein Co.* v. *Robertson*, 167 N. Y. 101; *Sweet* v. *Morrison*, 116 N. Y. 19; *Smith Cont. Co.* v. *City of New York*, 209 App. Div. 271; *Daniels Co.* v. *City of New York*, 196 App. Div. 856; *Sorensen* v. *Companhia*, 180 N. Y. Supp. 201.) The arbitrators exceeded their powers. (*Dodds* v. *Hakes*, 114 N. Y. 260; *Halstead* v. *Seaman*, 82 N. Y. 27; *Cullen* v. *Shipway*, 78 App. Div. 130; 177

N. Y. 571; *Matter of Conway,* 179 App. Div. 108; *Robinson* v. *Dahm,* 94 Misc. Rep. 729.) The withdrawal of one arbitrator created a vacancy which under the circumstances could only have been filled by complying with the provisions of section 4, article 2 of the Arbitration Law. (*Red Cross Line Case,* 264 U. S. 109.) The failure of all three arbitrators to hear all the allegations and proofs renders the award void. (*Bulson* v. *Lohnes,* 29 N. Y. 291; *Kent* v. *French,* 76 Iowa, 187; *Short* v. *Pratt,* 6 Mass. 496.)

*David Leventritt* and *Edgar M. Leventritt* for Liverpool Marine and General Insurance Company Ltd., *amicus curiæ.*

*John W. Hogan* and *Wendell P. Barker* for Bankers and Shippers Insurance Company of New York, *amicus curiæ.*

POUND, J. A preliminary question involved in this appeal is as follows: When a submission to arbitration by three arbitrators has been entered into pursuant to the terms of a contract to settle all disputes thereunder by arbitration and one of the arbitrators formally withdraws and refuses to take part therein before all the proofs of the parties have been heard, may two arbitrators proceed with the hearing and make a valid award?

Civil Practice Act, section 1453, provides: " * * * All the arbitrators selected as prescribed in this article must meet together and hear all the allegations and proofs of the parties; but an award by a majority of them is valid unless the concurrence of all is expressly required in the submission."

When an arbitrator withdraws before the allegations and proofs of the parties have been heard, the filling of the vacancy by appointment of a substitute arbitrator either under the terms of the contract or under Arbitration Law (§§ 3, 4) becomes a prerequisite to further proceedings

under the submission. (*Bulson* v. *Lohnes,* 29 N. Y. 291.) The purpose of the statute was to change the common-law rule which permitted two arbitrators to hear when the third was notified and refused to attend or was willfully absent (*Crofoot* v. *Allen,* 2 Wend. 494) and its plain mandate may not be ignored, whether an arbitrator at this stage of the proceedings withdraws for good cause or arbitrarily. (See, however, *Matter of Am. Eagle Fire Ins. Co.* v. *N. J. Ins. Co.,* 240 N. Y. 398, decided herewith.)

A decision on this point alone might dispose of the appeal but the question of the right of a party to withdraw from a submission to arbitration is also presented and a determination of this question is essential to the complete disposition of the case. Appellant contends that it may go on with the arbitration without application to the court because a submission is irrevocable except as other contracts are revocable. (Arbitration Law, § 2.) Respondent says, you may go on with the arbitration over our withdrawal only when the court says that you are proceeding under the terms of the submission and that we are in default in refusing to arbitrate the question submitted. An analysis of the Arbitration Law becomes helpful at this stage. It makes no change in the law as it stood at the time of its enactment except to make arbitration agreements and submissions irrevocable and to provide the judicial remedy in case of a default. (*Berizzi Co.* v. *Krausz,* 239 N. Y. 315, 318, 319.)

Arbitration Law, section 2, provides:

" Validity of arbitration agreements. A provision in a written contract to settle by arbitration a controversy thereafter arising between the parties to the contract, or a submission hereafter entered into of an existing controversy to arbitration pursuant to title eight of chapter seventeen of the code of civil procedure, or article eighty-three of the civil practice act, shall be *valid, enforcible*

*and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract.*"

But neither the agreement to arbitrate nor the submission is self-executory. A party to an arbitration agreement may break his contract. A remedy is provided in case of his default by Arbitration Law, section 3. A party aggrieved by the failure, neglect or refusal of another to perform either under a contract or a submission providing for arbitration may petition the Supreme Court for an order directing that the arbitration proceed. On such an application, the other party may put in issue (a) the making of the contract to arbitrate the questions sought to be submitted to arbitration, or (b) the submission of such questions to arbitration, or (c) the failure to comply therewith. If the making of the contract or the submission or the default be in issue the issue thus joined shall be tried. A jury trial may be demanded. It is only when it is found by the court that a written contract of arbitration has been made or a submission has been entered into covering the question sought to be included in the arbitration and that a party is in default in the performance thereof that the court will order the parties to the contract or submission to proceed with the arbitration in accordance with the terms thereof. The question arises in this case whether there was a default in the performance of the arbitration agreement or the submission. Grace Company contends that it made no contract to arbitrate and no submission to arbitrate the question of the quality of the butter on its arrival in New York. The question is at least arguable. When it withdrew Bullard Company became a party aggrieved. It could not proceed with the arbitration on the question of quality although arbitrators had been chosen and the hearing had begun.

Much reliance is placed by the appellants on the English case of *Bankers & Shippers Insurance Co.* v. *Liverpool Marine & General Insurance Co., Ltd.* (N. Y. L. J. Mar.

4, 1925). The contract in question in that case was a New York contract and the English courts undertook to apply the New York Arbitration Law. The arbitration clause contained a provision that in default of either party appointing any arbitrator within one month of the other party requesting it to do so, the latter should name both arbitrators and they should elect an umpire. One party denied the authority of arbitrators thus named and declined to take any part · in the arbitration. Arbitrators were named and proceeded to make an award. Action was brought thereon. Much the same question was presented as when, as in this case, the arbitrators were named and the hearing begun. May the arbitration proceed without judicial sanction? It was held by the Court of Appeal that by reason of the provisions of the contract for the appointment of a full board of arbitrators without the consent of the party in default the active party was not " aggrieved " by the conduct of the other party and might proceed without obtaining the sanction of the court. The learned court held that the constitutional right of trial by jury was waived by the agreement to refer. In reaching this conclusion it overlooked the scheme of the New York Arbitration Law which reserves to a party to an arbitration or submission the right to a judicial hearing before the arbitration shall proceed. True, the contract and the submission are irrevocable, but the terms of the contract and of the submission are open to judicial inquiry. Did the party agree to arbitrate or submit the questions sought to be arbitrated? Is he in default under the contract or the submission in refusing to arbitrate or to proceed with an arbitration once begun?

Repudiation by one party of the contract to arbitrate does not, therefore, leave the other party in position to proceed without the sanction of the court. The withdrawing party might still assert that it had made no contract to submit to arbitration the questions contained in

the submission; that it was not in default under the contract. Mr. Justice BAILHACHE, on the trial of the English action, aptly stated the proper rule as follows: " It seems to me the section of the act treats such a party, the party who desires to go to arbitration, as a party aggrieved if the other party fails, neglects or refuses to perform his obligation under the contract. That seems to me the definition of the party aggrieved, and his grievance is the failure, neglect or refusal of another to perform under the contract.  *  *  *  Prior to the act of 1920 there was no remedy when a person refused to submit to arbitration. The act of 1920 does provide a remedy but that remedy is, if the person still desires to go to arbitration that he shall do so after first obtaining the sanction of the court to that effect."

So with a submission. Agreements to arbitrate and submissions to arbitrate are on the same footing (Arbitration Law, §§ 2, 3). Arbitrators must observe their commission and keep within their jurisdiction. If a *bona fide* question arises as to the proper construction of the submission agreement, a party may raise the question by withdrawing from the arbitration. If the party aggrieved then desires to go on with the arbitration he must apply to the court and the court will determine whether or not the withdrawing party was in default in refusing to proceed to arbitrate a question covered by the submission agreement.

Such construction of the Arbitration Law prevents a party or the arbitrators from proceeding to arbitrate and decide questions which the other party never agreed to submit to arbitration. Arbitrations should be encouraged but arbitration tribunals may not determine for themselves, over the objection of a party, to include within the scope of the arbitration questions which were never submitted to arbitration.

The rules of the Dried Fruit Association of New York, which governed the arbitration, were not produced to

sustain the award in the Special Term, the Appellate Division or in this court. The Civil Practice Act controls unless the party seeking to uphold the award establishes that it is inconsistent with the terms of the submission.

The award herein and the judgment entered thereon were properly vacated under Civil Practice Act, section 1457.

The order should be affirmed, with costs.

HISCOCK, Ch. J., McLAUGHLIN, CRANE, ANDREWS and LEHMAN, JJ., concur; CARDOZO, J., not voting.

Order affirmed.